Troy Law, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and*
*potential Rule 23 Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 ---------------------------------------------------------------- x
PARANEE SARIKAPUTAR,
PEDRO COJ CUMES,
PHOUVIENGSONE SYSOUVONG
        a/k/a Tukta Phouviengsone,
SUPUNNEE SUKASAWETT,
WIPAPORN SITTIDEJ,
VINAI PATAN,
PHAISIT SIRIMATRASIT,
CHAICHANA KITTIRONNAKORNKUL
        a/k/a Kay Kittironnakornkul, and
SUPATRA WUNGMARN
*on behalf of themselves and others similarly situated,*
                                    Plaintiffs,

                        v.

VERATIP CORP.
        d/b/a ThaiNY Restaurant,
NINETY-NINE PLUS CORP.
        d/b/a ThaiNY Restaurant,
J AKIRA LLC
        d/b/a Tom Yum
        d/b/a M-Thai,
EXCEL RESTAURANT GROUP CORP.
        d/b/a Charm's,
THAINY RESTAURANT LLC
        d/b/a M Thai,
9999 MIDTOWN CORP.
        d/b/a Thai Rice and Noodle,
EXCELLENT DUMPLING HOUSE INC
        d/b/a Excellent Dumpling House,
PROSPERITY 89 CORP.
        d/b/a Thais New York,
THAI-TO-GO LLC
        d/b/a Thais New York,
LUCKY CHARM 6365 CORP

Case No. 19-cv-11168

29 U.S.C. § 216(b) COLLECTIVE
ACTION & FED. R. CIV. P. 23
CLASS ACTION

**COMPLAINT**

        d/b/a Thais New York,
OPULENT RESTAURANT CORPORATION
        d/b/a Thais New York,
LUCKY DD CORP
        d/b/a Thais New York,
PERAPONG CHOTIMANENOPHAN
        a/k/a Peter Chotimanenophan,
MICHAEL P. BRONSTEIN
        a/k/a Michael Bronstein,
CHARDENPONG OONAPANYO
        a/k/a Chareonpong Oonpanyo,
ADIDSUDA CHUNTON
        a/k/a Amy Chunton,
HIN WAI LAW,
AH DI, and
GIFT RAKOWSKI
                              Defendants.
---------------------------------------------------------------- x

Plaintiffs PARANEE SARIKAPUTAR, PEDRO COJ CUMES, (hereafter the "FLSA &

NYLL Plaintiffs"), PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone,

SUPUNNEE SUKASAWETT, WIPAPORN SITTIDEJ, VINAI PATAN, PHAISIT

SIRIMATRASIT, CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul, and

SUPATRA WUNGMARN (hereafter the "NYLL Plaintiffs") (hereafter collectively the

"Plaintiffs"), on behalf of themselves and other similarly situated, by and through their attorney,

Troy Law, PLLC, hereby bring this complaint against Defendants VERATIP CORP. d/b/a ThaiNY

Restaurant, NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant, J AKIRA LLC d/b/a Tom

Yum d/b/a M-Thai, EXCEL RESTAURANT GROUP CORP. d/b/a Charm's, THAINY

RESTAURANT LLC d/b/a M Thai, 9999 MIDTOWN CORP. d/b/a Thai Rice and Noodle,

EXCELLENT DUMPLING HOUSE INC d/b/a Excellent Dumpling House, PROSPERITY 89

CORP. d/b/a Thais New York, THAI-TO-GO LLC d/b/a Thais New York, LUCKY CHARM 6365

CORP d/b/a Thais New York, OPULENT RESTAURANT CORPORATION d/b/a Thais New

York, LUCKY DD CORP d/b/a Thais New York, PERAPONG CHOTIMANENOPHAN a/k/a

Peter Chotimanenophan, SHUE-LEE CHENG LI, MICHAEL P. BRONSTEIN a/k/a Michael Bronstein, CHARDENPONG OONAPANYO a/k/a Chareonpong Oonpanyo, ADIDSUDA CHUNTON a/k/a Amy Chunton, HIN WAI LAW, AH DI, and GIFT RAKOWSKI (hereafter collectively referred the "Defendants"), and allege as follows:

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly-situated employees against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, overtime compensation for all hours worked over forty (40) each workweek.

3. Defendants refused to record all of the time that Plaintiffs and similarly situated employees work or worked, including work done in excess of forty hours each week.

4. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime, (3) rehiring or reinstatement of the employee to his or her position with restoration of seniority or an award of front pay in lieu of reinstatement, (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

5. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations § 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid wage/minimum wage, (2) unpaid overtime wage compensation, (3) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire Notice

detailing rates of pay and payday, (4) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, and unpaid "spread of hours" premium in the amount of twenty five percent under NYLL §§ 190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

6.    Plaintiffs further allege that pursuant to NYLL § 215 that they are entitled to rehiring or reinstatement of the employee to his or her position with restoration of seniority or an award of front pay in lieu of reinstatement under 29 U.S.C. § 216 and NYLL § 215.

## JURISDICTION AND VENUE

7.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

9.    Plaintiff PARANEE SARIKAPUTAR was employed by Defendants VERATIP CORP. d/b/a ThaiNY Restaurant, NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant, J Akira

LLC d/b/a Tom Yum d/b/a M-Thai, ThaiNY Restaurant LLC d/b/a M Thai, 9999 Midtown Corp. d/b/a Thai Rice and Noodle, Prosperity 89 Corp. d/b/a Thais New York, and Thai-to-Go LLC d/b/a Thais New York, operating together as a single enterprise (hereinafter and collectively the "Enterprise Defendants"), to work as a cook at the following locations at various times detailed more fully below: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai); "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai); and "Thai Rice and Noodle" located at 165 W 23rd Street New York, NY 10011 (operated by 9999 Midtown Corp. d/b/a Thai Rice and Noodle).

10.     Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone was employed by the Enterprise Defendants to work as a cook at the following locations at various times detailed more fully below: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai); and "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai).

11.     Plaintiff SUPUNNEE SUKASAWETT was employed by the Enterprise Defendants to work as a cook at the following locations at various times detailed more fully below: "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai); "M Thai" located at 232 Eighth Avenue,

New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai); "Thai Rice and Noodle" located at 165 W 23rd Street, New York, NY 10011 (operated by 9999 Midtown Corp. d/b/a Thai Rice and Noodle); and "Thais New York" located first at 1718 Second Avenue, New York, NY 10128 and later at 1750 Second Avenue, New York, NY 10128 (operated by Prosperity 89 Corp. d/b/a Thais New York and Thai-to-Go LLC d/b/a Thais New York).

12.    Plaintiff WIPAPORN SITTIDEJ was employed by the Enterprise Defendants to work as an appetizer cook at the following locations at various times detailed more fully below: "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai); and "Thais New York" located first at 1718 Second Avenue, New York, NY 10128 and later at 1750 Second Avenue, New York, NY 10128 (operated by Prosperity 89 Corp. d/b/a Thais New York and Thai-to-Go LLC d/b/a Thais New York)

13.    Plaintiff VINAI PATAN was employed by the Enterprise Defendants to work as a kitchen helper at the following locations at various times: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); and "Thais New York" located at 1718 Second Avenue, New York, NY 10128 (operated by Prosperity 89 Corp. d/b/a Thais New York).

14.    Plaintiff PEDRO COJ CUMES was employed by the Enterprise Defendants to work as a delivery person at the following locations at various times: "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai); "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai); and "Thai Rice and Noodle" located at 165 W 23rd Street, New York, NY 10011 (operated by 9999 Midtown Corp. d/b/a Thai Rice and

Noodle).

15.     Plaintiff PHAISIT SIRIMATRASIT was employed by the Enterprise Defendants to work as a cook at the following locations at various times: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai); and "Thais New York" located at 1718 Second Avenue, New York, NY 10128 (operated by Prosperity 89 Corp. d/b/a Thais New York).

16.     Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul was employed by the Enterprise Defendants to work as a runner and waiter at the following locations at various times: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai);  "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai)and "Thais New York" located at 1718 Second Avenue, New York, NY 10128 (operated by Prosperity 89 Corp. d/b/a Thais New York).

17.     Plaintiff SUPATRA WUNGMARN was employed by the Enterprise Defendants to work as a waitress and kitchen worker (helping out on demand) at the following locations at various times: "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by ThaiNY Restaurant LLC d/b/a M Thai); "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011 (operated by J Akira LLC d/b/a Tom Yum d/b/a M-Thai).

**<u>DEFENDANTS</u>**

*Corporate Defendants*

18.    Defendant VERATIP CORP. d/b/a ThaiNY Restaurant is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "ThaiNY Restaurant" at 394 Third Avenue, New York, NY 10016.

19.    VERATIP CORP. d/b/a ThaiNY Restaurant was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

20.    VERATIP CORP. d/b/a ThaiNY Restaurant purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

21.    Defendant NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "ThaiNY Restaurant" at 394 Third Avenue, New York, NY 10016.

22.    NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

23.    NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

24.    Defendant J Akira LLC d/b/a Tom Yum d/b/a M-Thai is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "Tom Yum," later called "M Thai," at 200 Eighth Avenue, New York, NY 10011 and also acted as the central payroll company which would write the checks for all of the employees of the Enterprise Defendants.

25.     J Akira LLC d/b/a Tom Yum d/b/a M-Thai was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

26.     J Akira LLC d/b/a Tom Yum d/b/a M-Thai purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

27.     Defendant Excel Restaurant Group Corp. d/b/a Charm's is a domestic business corporation organized under the laws of the State of New York, which during the pendency of the lawsuit Sarikaputar et al v. Veratip Corp. et al, 1:17-cv-00814-ALC in the Southern District of New York ("Sarikaputar"), upon information and belief sometime in 2017, being aware of the pendency of that lawsuit, took ownership of and began operating the premises located at 200 Eighth Avenue, New York, NY 10011 as "Charm's."

28.     Upon information and belief, Excel Restaurant Group Corp. d/b/a Charm's is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

29.     Upon information and belief, Excel Restaurant Group Corp. d/b/a Charm's purchases and handles goods moved in interstate commerce.

30.     Defendant ThaiNY Restaurant LLC d/b/a M Thai is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "M-Thai" at 232 Eighth Avenue, New York, NY 10011.

31.     ThaiNY Restaurant LLC d/b/a M Thai was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

32.     ThaiNY Restaurant LLC d/b/a M Thai purchased and handled goods moved in

interstate commerce during the period relevant to this lawsuit.

33.    Defendant 9999 Midtown Corp. d/b/a Thai Rice and Noodle is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "Thai Rice and Noodle" at 165 W 23rd Street, New York, NY 10011.

34.    9999 Midtown Corp. d/b/a Thai Rice and Noodle was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

35.    9999 Midtown Corp. d/b/a Thai Rice and Noodle purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

36.    Defendant Excellent Dumpling House Inc d/b/a Excellent Dumpling House is a domestic business corporation organized under the laws of the State of New York, which during the pendency of Sarikaputar, upon information and belief sometime in 2017, being aware of the pendency of Sarikaputar, took ownership of and began operating the premises located at 165 W 23rd Street, New York, NY 10011 as "Excellent Dumpling House."

37.    Upon information and belief, Excel Restaurant Group Corp. d/b/a Charm's is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

38.    Upon information and belief, Excel Restaurant Group Corp. d/b/a Charm's purchases and handles goods moved in interstate commerce.

39.    Defendant Prosperity 89 Corp. d/b/a Thais New York is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "Thais New York" at 1718 Second Avenue, New York, NY 10128.

40.    Prosperity 89 Corp. d/b/a Thais New York was during the time relevant to this

lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

41.     Prosperity 89 Corp. d/b/a Thais New York purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

42.     Defendant Thai-to-Go LLC d/b/a Thais New York is a domestic business corporation organized under the laws of the State of New York, which during the time relevant to this lawsuit operated "Thais New York" at 1750 Second Avenue, New York, NY 10128.

43.     Thai-to-Go LLC d/b/a Thais New York was during the time relevant to this lawsuit a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

44.     Thai-to-Go LLC d/b/a Thais New York purchased and handled goods moved in interstate commerce during the period relevant to this lawsuit.

45.     Defendant Lucky Charm 6365 Corp d/b/a Thais New York is a domestic business corporation organized under the laws of the State of New York, which during the pendency of Sarikaputar, upon information and belief some time in 2018, being aware of the pendency of Sarikaputar, took ownership of and continued operating the premises located at 1750 Second Avenue, New York, NY 10128 as "Thais New York."

46.     Upon information and belief, Lucky Charm 6365 Corp d/b/a Thais New York is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

47.     Upon information and belief, Lucky Charm 6365 Corp d/b/a Thais New York purchases and handles goods moved in interstate commerce.

48.     Defendant Opulent Restaurant Corporation d/b/a Thais New York is a domestic

business corporation organized under the laws of the State of New York, which during the pendency of Sarikaputar, upon information and belief some time in 2019, being aware of the pendency of Sarikaputar, took ownership of and continued operating the premises located at 1750 Second Avenue, New York, NY 10128 as "Thais New York."

49.    Upon information and belief, Opulent Restaurant Corporation d/b/a Thais New York is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

50.    Upon information and belief, Opulent Restaurant Corporation d/b/a Thais New York purchases and handles goods moved in interstate commerce.

51.    Defendant Lucky DD Corp d/b/a Thais New York is a domestic business corporation organized under the laws of the State of New York, which during the pendency of Sarikaputar, upon information and belief some time in 2019, being aware of the pendency of Sarikaputar, took ownership of and continued operating the premises located at 1750 Second Avenue, New York, NY 10128 as "Thais New York."

52.    Upon information and belief, Lucky DD Corp d/b/a Thais New York is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

53.    Upon information and belief, Lucky DD Corp d/b/a Thais New York purchases and handles goods moved in interstate commerce.

*Individual Defendants*

54.    The Individual Defendants are officers, directors, managers, majority shareholders and/or owners of one or more of the Corporate Defendants.

55.    Those Individual Defendants who are among ten largest shareholders or members

with ownership interest of one or more of the Corporate Defendants are individually responsible for unpaid wages under the New York Business Corporation Law and New York Limited Liability Company Law.

56.     Defendant PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan had the power to hire and fire employees of the Enterprise Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and maintained employment records for the Enterprise Defendants.

57.     PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan hired Plaintiff PEDRO COJ CUMES and actively managed ThaiNY Restaurant, occasionally supervised employees at Tom Yum, M-Thai, M Thai, Thai Rice and Noodles, and Thais New York during the period relevant to this lawsuit, and scheduled at which locations operated by the Enterprise Defendants the Plaintiffs would work.

58.     J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai, THAINY RESTAURANT LLC d/b/a M Thai, and 9999 MIDTOWN CORP. d/b/a Thai Rice and Noodle have as registered addresses for service of process an address where PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan resided.

59.     PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise Defendants.

60.     Defendant MICHAEL P. BRONSTEIN a/k/a Michael Bronstein had the power to hire and fire employees of the Enterprise Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and

maintained employment records for the Enterprise Defendants.

61.    MICHAEL P. BRONSTEIN a/k/a Michael Bronstein actively managed Tom Yum, M-Thai, and M Thai during the period relevant to this lawsuit, and would instruct employees, including Plaintiff PARANEE SARIKAPUTAR, in the performance of their job duties.

62.    MICHAEL P. BRONSTEIN a/k/a Michael Bronstein was the liquor license principal for J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai and THAINY RESTAURANT LLC d/b/a M Thai.

63.    MICHAEL P. BRONSTEIN a/k/a Michael Bronstein was the accountant of J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai, prepared tax returns for J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai, and prepared the payroll for all of the Enterprise Defendants, the employees of which were all paid by J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai.

64.    MICHAEL P. BRONSTEIN a/k/a Michael Bronstein acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise Defendants.

65.    Defendant CHARDENPONG OONAPANYO a/k/a Chareonpong Oonpanyo had the power to hire and fire employees of the Enterprise Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and maintained employment records for the Enterprise Defendants.

66.    CHARDENPONG OONAPANYO a/k/a Chareonpong Oonpanyo was the CEO and liquor license principal of VERATIP CORP. d/b/a ThaiNY Restaurant.

67.    CHARDENPONG OONAPANYO a/k/a Chareonpong Oonpanyo acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and

regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise Defendants.

68.     Defendant ADIDSUDA CHUNTON a/k/a Amy Chunton had the power to hire and fire employees of the Enterprise Defendants as well as EXCEL RESTAURANT GROUP CORP. d/b/a Charm's, EXCELLENT DUMPLING HOUSE INC d/b/a Excellent Dumpling House, LUCKY CHARM 6365 CORP d/b/a Thais New York, OPULENT RESTAURANT CORPORATION d/b/a Thais New York, and LUCKY DD CORP d/b/a Thais New York (hereinafter and collectively, excluding the Enterprise Defendants, the "Successor Defendants"); supervised and controlled employee work schedules and conditions of employment; determined employees' rates and methods of pay; and maintained employment records for the Enterprise Defendants and Successor Defendants.

69.     During the period relevant to this lawsuit, ADIDSUDA CHUNTON a/k/a Amy Chunton actively managed ThaiNY Restaurant, M Thai, and Thais New York.

70.     ADIDSUDA CHUNTON a/k/a Amy Chunton interviewed employees including Plaintiffs PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone and PHAISIT SIRIMATRASIT.

71.     ADIDSUDA CHUNTON a/k/a Amy Chunton also hired employees including Plaintiffs PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone and PHAISIT SIRIMATRASIT.

72.     ADIDSUDA CHUNTON a/k/a Amy Chunton paid employees including Plaintiffs PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone, SUPUNNEE SUKASAWETT, and PHAISIT SIRIMATRASIT, and directed employees, including PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone to work at particular locations from week to week.

73.    ADIDSUDA   CHUNTON   a/k/a   Amy   Chunton   did   arrange   both PHOUVIENGSONE   SYSOUVONG   a/k/a   Tukta   Phouviengsone   and   PHAISIT SIRIMATRASIT's working schedule when they began work.

74.    ADIDSUDA CHUNTON a/k/a Amy Chunton paid Plaintiffs CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul and SUPATRA WUNGMARN.

75.    ADIDSUDA CHUNTON a/k/a Amy Chunton harassed and threatened PARANEE SARIKAPUTAR via phone and by text with threats of deportation even though PARANEE SARIKAPUTAR was engaging in the protected activity of participating in a FLSA collective action.

76.    ADIDSUDA CHUNTON a/k/a Amy Chunton is the CEO of PROSPERITY 89 CORP. d/b/a Thais New York and the liquor license principal for EXCEL RESTAURANT GROUP CORP. d/b/a Charm's and LUCKY CHARM 6365 CORP d/b/a Thais New York.

77.    LUCKY CHARM 6365 CORP d/b/a Thais New York has as its registered address for service of process an address where ADIDSUDA CHUNTON a/k/a Amy Chunton resides.

78.    ADIDSUDA CHUNTON a/k/a Amy Chunton acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise Defendants.

79.    Defendant HIN WAI LAW had the power to hire and fire employees of the Enterprise Defendants and Successor Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and maintained employment records for the Enterprise Defendants and Successor Defendants.

80.    HIN WAI LAW is the liquor license principal for EXCELLENT DUMPLING

HOUSE INC d/b/a Excellent Dumpling House and during the period relevant to this lawsuit managed ThaiNY Restaurant, Tom Yum, M-Thai, M Thai, Thai Rice and Noodles, and Thais New York.

81.    HIN WAI LAW acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise Defendants.

82.    Defendant AH DI had the power to hire and fire employees of the Enterprise Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and maintained employment records for the Enterprise Defendants.

83.    Defendant AH DI was the one who most often paid employees, including PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone. He is a relative of ADIDSUDA CHUNTON a/k/a Amy Chunton's.

84.    Defendant GIFT RAKOWSKI had and has the power to hire and fire employees of the Enterprise Defendants and Successor Defendants, supervised and controlled employee work schedules and conditions of employment, determined employees' rates and methods of pay, and maintained employment records for the Enterprise Defendants and Successor Defendants.

85.    GIFT RAKOWSKI is the liquor license principal for PROSPERITY 89 CORP. d/b/a Thais New York, and was during times relevant to this lawsuit the active and regular manager of ThaiNY Restaurant, Tom Yum, M-Thai, M Thai, Thai Rice and Noodles, and Thais New York.

86.    GIFT RAKOWSKI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203d, and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Enterprise

Defendants.

87.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/
or conditions have been waived.

## STATEMENT OF FACTS

### *The Enterprise Defendants Operated a Single Enterprise*

88.    The Enterprise Defendants constitute a single enterprise as the term is defined by
29 USC § 203(r) insofar as the various locations:

      a.    Shared owners, officers, and managers, including Individual Defendants
PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan, MICHAEL P.
BRONSTEIN a/k/a Michael Bronstein, and ADIDSUDA CHUNTON
a/k/a Amy Chunton;

      b.    Shared employees among themselves;

      c.    Assigned employees, including Plaintiffs, to work at one or more locations
on a weekly schedule set by Individual Defendants depending on need;

      d.    Payed employees for the weeks' work using corporate Defendant J AKIRA
LLC d/b/a ThaiNY as the payor no matter at which location or locations the employees
worked; and

      e.    Were otherwise engaged in related activities performed through unified
operation and/or common control for a common business purpose.

### *The Successor Defendants Are Successors to the Enterprise Defendants*

89.    EXCEL RESTAURANT GROUP CORP. d/b/a Charm's upon information and
belief sometime in 2017, being aware of the pendency of *Sarikaputar*, took ownership of and began
operating the premises located at 200 Eighth Avenue, New York, NY 10011 as "Charm's."

90.    EXCEL RESTAURANT GROUP CORP. d/b/a Charm's operates "Charm's" at the

same location as J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai operated first "Tom Yum" and then "M-Thai," using substantially the same workforce and equipment, serving substantially the same customers, managed by substantially the same management, including ADIDSUDA CHUNTON a/k/a Amy Chunton, and owned by some of the same owners, including ADIDSUDA CHUNTON a/k/a Amy Chunton.

91.    EXCELLENT DUMPLING HOUSE INC d/b/a Excellent Dumpling House upon information and belief sometime in 2017, being aware of the pendency of *Sarikaputar*, took ownership of and began operating the premises located at 165 W 23rd Street, New York, NY 10011 as "Excellent Dumpling House."

92.    EXCELLENT DUMPLING HOUSE INC d/b/a Excellent Dumpling House operates "Excellent Dumpling House" at the same location as 9999 MIDTOWN CORP. d/b/a Thai Rice and Noodle operated "Thai Rice and Noodle," using substantially the same workforce and equipment, serving substantially the same customers, and managed by substantially the same management, including HIN WAI LAW.

93.    LUCKY CHARM 6365 CORP d/b/a Thais New York, OPULENT RESTAURANT CORPORATION d/b/a Thais New York, and LUCKY DD CORP d/b/a Thais New York upon information and belief some time in 2019, being aware of the pendency of *Sarikaputar*, took ownership of and continued operating the premises located at 1750 Second Avenue, New York, NY 10128 as "Thais New York."

94.    LUCKY CHARM 6365 CORP d/b/a Thais New York, OPULENT RESTAURANT CORPORATION d/b/a Thais New York, and LUCKY DD CORP d/b/a Thais New York operate "Thais New York" at the same location where PROSPERITY 89 CORP. d/b/a Thais New York and THAI-TO-GO LLC d/b/a Thais New York operated "Thais New York," using the same

signage and menu, using substantially the same workforce and equipment, serving substantially the same customers, managed by substantially the same management, including ADIDSUDA CHUNTON a/k/a Amy Chunton, and owned by some of the same owners, including ADIDSUDA CHUNTON a/k/a Amy Chunton.

95.    Upon information and belief, the Successor Defendants continue to constitute a single enterprise among themselves as the term is defined by 29 USC § 203(r) insofar as the various locations:

a.    Share owners, officers, and managers, including Individual Defendant ADIDSUDA CHUNTON a/k/a Amy Chunton; and

b.    Are engaged in related activities performed through unified operation and/or common control for a common business purpose.

96.    Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

**Plaintiff PARANEE SARIKAPUTAR**

97.    From on or about November 1, 2011 to December 23, 2016, Plaintiff PARANEE SARIKAPUTAR worked as a cook for VERATIP CORP. d/b/a ThaiNY Restaurant, NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant, J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai, THAINY RESTAURANT LLC d/b/a M Thai, 9999 MIDTOWN CORP. d/b/a Thai Rice and Noodle, PROSPERITY 89 CORP. d/b/a Thais New York, and THAI-TO-GO LLC d/b/a Thais New York, operating together as a single enterprise (hereinafter and collectively the "Enterprise Defendants"), to work as a cook at the following locations at various times detailed more fully below: "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016 (operated by VERATIP CORP. d/b/a ThaiNY Restaurant and NINETY-NINE PLUS CORP. d/b/a ThaiNY Restaurant); "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY

10011 (operated by J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai); "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by THAINY RESTAURANT LLC d/b/a M Thai); and "Thai Rice and Noodle" located at 165 W 23rd Street New York, NY 10011 (operated by 9999 MIDTOWN CORP. d/b/a Thai Rice and Noodle).

98.    At all relevant times, Plaintiff PARANEE SARIKAPUTAR was not paid spread-of-hours for all days in which she worked over ten (10) hours in a workday.

99.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff PARANEE SARIKAPUTAR and similarly situated employees with Time of Hire Notice in English and in Thai (Plaintiff's primary language) reflecting true rates of pay and payday.

100.    At all relevant times, Defendants knowingly and failed to provide Plaintiff PARANEE SARIKAPUTAR and similarly situated employees with paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (Plaintiff's primary language), as required by NYLL § 195(1).

101.    At all relevant times, Defendants failed to pay Plaintiff PARANEE SARIKAPUTAR for all hours worked.

102.    At all relevant times, whenever Defendants paid Plaintiff PARANEE SARIKAPUTAR in check, Defendants post-dated the check.

103.    At all relevant times, whenever Defendants paid Plaintiff PARANEE SARIKAPUTAR in check, Defendants would make Plaintiff PARANEE SARIKAPUTAR to hold the check until such time when the Defendants are ready to exchange the check for cash.

104.    At all relevant times, when Plaintiff PARANEE SARIKAPUTAR complained to

PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan of Defendant's nonpayment of wages orally or via text message, PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan would within days of her request retaliate against Plaintiff PARANEE SARIKAPUTAR by first reducing the number of hours that she worked, and then terminating her employment.

105.    Defendants know or ought to know that such hour and pay reduction would dissuade a "reasonable worker" from making a complaint that puts the employer on notice that the Plaintiff is asserting her rights under the FLSA and NYLL to be paid her rightfully due wages.

106.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff PARANEE SARIKAPUTAR worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

107.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**2011/11/01-2014/10/31**

108.    From on or about November 1, 2011 to October 31, 2014, Plaintiff PARANEE SARIKAPUTAR worked for ThaiNY at 394 Third Avenue, New York, NY 10016.

109.    From on or about November 1, 2011 to on or about October 31, 2014, Plaintiff PARANEE SARIKAPUTAR's regular work schedule ran from:

    a.    12:00 to 23:00 during the weekdays for eleven (11) hours a day; and

    b.    12:00 to 24:00 during the weekends for twelve (12) hours a day.

110.    From on or about November 1, 2011 to on or about October 31, 2014, Plaintiff PARANEE SARIKAPUTAR had no break.

111.    From on or about November 1, 2011 to on or about October 31, 2014, Plaintiff

PARANEE SARIKAPUTAR worked five (5) days each week for Defendants.

112.     From on or about November 1, 2011 to on or about October 31, 2014, Plaintiff worked around fifty-seven (57) hours each week.

113.     From on or about November 1, 2011 to October 31, 2012, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of five hundred dollars ($500.00) each week.

114.     From on or about November 1, 2012 to October 31, 2013, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of five hundred twenty-five dollars ($525.00) each week.

115.     From on or about November 1, 2013 to October 31, 2014, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of five hundred fifty dollars ($550.00) each week.

**2014/11/01-2015/10/31**

116.     From on or about November 1, 2014 to October 31, 2015, Plaintiff PARANEE SARIKAPUTAR worked for M-Thai at 232 8th Avenue, New York, NY 10011.

117. From on or about November 1, 2014 to October 31, 2015, Plaintiff PARANEE SARIKAPUTAR's regular work schedule ran from:

        a.      11:00 to 23:00 for twelve (12) hours a day and five (5) days a week.

118.   From on or about November 1, 2014 to October 31, 2015, Plaintiff worked around fifty seven (57) hours each week.

119.   From on or about November 1, 2014 to October 31, 2015, Plaintiff had a one (1) hour "break" from 15:00-16:00, not fixed.

120.   However, between 15:00 and 16:00, Plaintiff was required to do side work immediately after finishing her lunch, which she finished in ten to fifteen minutes each workday.

121.   Additionally, if a customer ordered a dish during her lunch, her lunch ended early and she was required to go back to work.

122.   As a chef, Plaintiff's side work involved making spring roll, curry puff, and creating various types of curry (including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need.

123.   During Plaintiff's side work, if a customer ordered a dish, she put her side work asides and prepared dishes for the client.

124.       From on or about November 1, 2014 to October 31, 2015, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of six hundred dollars ($600) each week.

**2015/11/01-2015/12/31**

125.   From on or about November 1, 2015 to December 31, 2015, Plaintiff PARANEE SARIKAPUTAR worked for two restaurants: (1) M-Thai at its new location at 200 8th Avenue, New York, NY 10011 and (2) Thai Rice at 165 West 23rd Street, New York, NY 10011.

126.   From on or about November 1, 2015 to December 31, 2015, Plaintiff PARANEE SARIKAPUTAR's regular work schedule ran from:

a.       11:00-23:00 for twelve (12) hours a day at M-Thai at 200 8th Avenue, New York, NY 10011and

b.       11:00-22:30 for eleven and a half (11.5) hours a day at Thai Rice.

127.   From on or about November 1, 2015 to December 31, 2015, Plaintiff was presumably given a break from 15:00-17:30 at M-Thai at 200 8th Avenue, New York, NY 10011.

128.   From on or about November 1, 2015 to December 31, 2015, however, Plaintiff was not actually given a two and a half (2.5) hour break at M-Thai at 200 8th Avenue, New York, NY 10011.

129.   From on or about November 1, 2015 to December 31, 2015, Plaintiff was expected to do side work, including making spring roll, curry puff, and creating various types of curry

(including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need at M-Thai at 200 8th Avenue, New York, NY 10011.

130.    From on or about November 1, 2015 to December 31, 2015,Plaintiff had roughly fifteen (15) minutes for lunch at M-Thai at 200 8th Avenue, New York, NY 10011.

131.    From on or about November 1, 2015 to December 31, 2015, Plaintiff was presumably given a break from 15:00-16:00 at Thai Rice at 165 West 23rd Street, New York, NY 10011.

132.    From on or about November 1, 2015 to December 31, 2015, however, Plaintiff was not actually given a one hour break at M-Thai at 165 West 23rd Street, New York, NY 10011.

133.    From on or about November 1, 2015 to December 31, 2015, Plaintiff was expected to do side work, including making spring roll, curry puff, and creating various types of curry (including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need at Thai Rice at 165 West 23rd Street, New York, NY 10011.

134.    From on or about November 1, 2015 to December 31, 2015, Plaintiff had roughly fifteen (15) minutes for lunch at 165 West 23rd Street, New York, NY 10011.

135.    From on or about November 1, 2015 to December 31, 2015, Plaintiff PARANEE SARIKAPUTAR was assigned to work a total of five (5) days between M-Thai and Thai Rice restaurants on the weekly schedule handed to her at the beginning of each week.

136.    From on or about November 1, 2015 to December 31, 2015, Plaintiff PARANEE SARIKAPUTAR was expected to abide by the weekly schedule.

137.    From on or about November 1, 2015 to December 31, 2015, Plaintiff worked

around fifty eight and three quarter (58.75) hours each week.

138.  From on or about November 1, 2015 to December 31, 2015, Plaintiff PARANEE
SARIKAPUTAR was paid a flat compensation of six hundred fifty dollars ($650) each week.

**2016/01/01-2016/08/31**

139.    From on or about January 1, 2016 to August 31, 2016, Plaintiff PARANEE
SARIKAPUTAR worked for two restaurants: (1) M-Thai at its new location at 200 8th Avenue,
New York, NY 10011 and (2) Thai Rice at 165 West 23rd Street, New York, NY 10011.

140.  From on or about January 1, 2016 to August 31, 2016, Plaintiff PARANEE
SARIKAPUTAR's regular work schedule ran from:

    a.      11:00-23:00 for twelve (12) hours a day at M-Thai at 200 8th Avenue, New
    York, NY 10011and

    b.      11:00-22:30 for eleven and a half (11.5) hours a day at Thai Rice.

141.    From on or about January 1, 2016 to August 31, 2016, Plaintiff was presumably
given a break from 15:00-17:30 at M-Thai at 200 8th Avenue, New York, NY 10011.

142.    From on or about January 1, 2016 to August 31, 2016, however, Plaintiff was not
actually given a two and a half (2.5) hour break at M-Thai at 200 8th Avenue, New York, NY
10011.

143.    From on or about January 1, 2016 to August 31, 2016, Plaintiff was expected to do
side work, including making spring roll, curry puff, and creating various types of curry (including
green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including
hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the
restaurant need at M-Thai at 200 8th Avenue, New York, NY 10011.

144.    From on or about January 1, 2016 to August 31, 2016,Plaintiff had roughly fifteen
(15) minutes for lunch at M-Thai at 200 8th Avenue, New York, NY 10011.

145.    From on or about January 1, 2016 to August 31, 2016, Plaintiff was presumably given a break from 15:00-16:00 at Thai Rice at 165 West 23rd Street, New York, NY 10011.

146.    From on or about January 1, 2016 to August 31, 2016, however, Plaintiff was not actually given a one hour break at M-Thai at 165 West 23rd Street, New York, NY 10011.

147.    From on or about January 1, 2016 to August 31, 2016, Plaintiff was expected to do side work, including making spring roll, curry puff, and creating various types of curry (including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need at Thai Rice at 165 West 23rd Street, New York, NY 10011.

148.    From on or about January 1, 2016 to August 31, 2016, Plaintiff had roughly fifteen (15) minutes for lunch at 165 West 23rd Street, New York, NY 10011.

149.    From on or about January 1, 2016 to August 31, 2016, Plaintiff PARANEE SARIKAPUTAR was assigned to work a total of four (4) days between M-Thai and Thai Rice restaurants on the weekly schedule handed to her at the beginning of each week.

150.    From on or about January 1, 2016 to August 31, 2016, Plaintiff PARANEE SARIKAPUTAR was expected to abide by the weekly schedule.

151.    From on or about January 1, 2016 to August 31, 2016, Plaintiff worked around forty seven (47) hours each week.

152. From on or about January 1, 2016 to August 31, 2016, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of six hundred fifty dollars ($650) if Plaintiff worked five (5) days and five hundred and forty dollars ($540) if Plaintiff worked four (4) days each week.

**2016/09/01-2016/09/30**

153.    From on or about September 1, 2016 to September 30, 2016, Plaintiff PARANEE

SARIKAPUTAR worked for two restaurants: (1) M-Thai at its new location at 200 8th Avenue, New York, NY 10011 and (2) ThaiNY at 394 Third Avenue, New York, NY 10016.

154.  From on or about September 1, 2016 to September 30, 2016, Plaintiff PARANEE SARIKAPUTAR's regular work schedule ran from:

a.       11:00-22:30 for eleven and a half (11.5) hours a day at M-Thai at 200 8th Avenue, New York, NY 10011;

b.       12:00-23:00 for eleven (11) hours a day at ThaiNY on Monday, Tuesday, Wednesday or Sunday; and

c.       12:00-24:00 for twelve (12) hours a day for ThaiNY on Thursday, Friday and Saturday.

155.    From on or about September 1, 2016 to September 30, 2016, Plaintiff was presumably given a break from 15:00-17:30 at M-Thai at 200 8th Avenue, New York, NY 10011.

156.    From on or about September 1, 2016 to September 30, 2016, however, Plaintiff was not actually given a two and a half (2.5) hour break at M-Thai at 200 8th Avenue, New York, NY 10011.

157.    From on or about September 1, 2016 to September 30, 2016, Plaintiff was expected to do side work, including making spring roll, curry puff, and creating various types of curry (including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need at M-Thai at 200 8th Avenue, New York, NY 10011.

158.    From on or about September 1, 2016 to September 30, 2016, Plaintiff had roughly fifteen (15) minutes for lunch at M-Thai at 200 8th Avenue, New York, NY 10011.

159.    From on or about September 1, 2016 to September 30, 2016, Plaintiff was not given

a break.

160.    From on or about September 1, 2016 to September 30, 2016, Plaintiff PARANEE SARIKAPUTAR was assigned to work a total of two (2) days at M-Thai and one (1) day at ThaiNY restaurants on the weekly schedule handed to her at the beginning of each week.

161.    From on or about September 1, 2016 to September 30, 2016, Plaintiff PARANEE SARIKAPUTAR was expected to abide by the weekly schedule.

162.    From on or about September 1, 2016 to September 30, 2016, Plaintiff worked around thirty five (35) hours each week.

163.    From on or about September 1, 2016 to September 30, 2016, Plaintiff PARANEE SARIKAPUTAR was paid a flat compensation of three hundred and ninety dollars ($390) if Plaintiff worked three (3) days and two hundred sixty dollars ($260) if Plaintiff worked two (2) days each week.

**2016/10/01-2016/12/25**

164.    From on or about October 1, 2016 to December 25, 2016, Plaintiff PARANEE SARIKAPUTAR worked for two restaurants: (1) M-Thai at its new location at 200 8th Avenue, New York, NY 10011 and (2) ThaiNY at 394 Third Avenue, New York, NY 10016.

165.    From on or about October 1, 2016 to December 25, 2016, Plaintiff PARANEE SARIKAPUTAR's regular work schedule ran from:

       a.    11:00-22:30 for eleven and a half (11.5) hours a day at M-Thai at 200 8th Avenue, New York, NY 10011and

       b.    11:00-22:30 for eleven and a half (11.5) hours a day at ThaiNY.

166.    From on or about October 1, 2016 to December 25, 2016, Plaintiff was presumably given a break from 15:00-17:30 at M-Thai at 200 8th Avenue, New York, NY 10011.

167.    From on or about October 1, 2016 to December 25, 2016, however, Plaintiff was

not actually given a two and a half (2.5) hour break at M-Thai at 200 8th Avenue, New York, NY 10011.

168.    From on or about October 1, 2016 to December 25, 2016, Plaintiff was expected to do side work, including making spring roll, curry puff, and creating various types of curry (including green curry, red curry, yellow curry, Massana curry, Penang curry), a 8-quart soup broth (including hot & sour and spicy soup), and salad sauce with vinegar, and fish sauce, depending on the restaurant need at M-Thai at 200 8th Avenue, New York, NY 10011.

169.    From on or about October 1, 2016 to December 25, 2016, Plaintiff had roughly fifteen (15) minutes for lunch at M-Thai at 200 8th Avenue, New York, NY 10011.

170.    From on or about October 1, 2016 to December 25, 2016, Plaintiff was not given a break.

171.    From on or about October 1, 2016 to December 25, 2016, Plaintiff PARANEE SARIKAPUTAR was assigned to work a total of two (2) days at M-Thai and one (1) day at ThaiNY restaurants on the weekly schedule handed to her at the beginning of each week.

172.    From on or about October 1, 2016 to December 25, 2016, Plaintiff PARANEE SARIKAPUTAR was expected to abide by the weekly schedule.

173.    From on or about October 1, 2016 to December 25, 2016, Plaintiff worked around twenty three (23) hours each week.

***Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone***

174.    From on or about September 8, 2014 to July 31, 2015, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked as a cook for VERATIP CORP d/b/a ThaiNY, d/b/a M-Thai, and d/b/a Thai Rice; J AKIRA LLC d/b/a ThaiNY, d/b/a M-Thai, and d/b/a Thai Rice; THAINY RESTAURANT LLC d/b/a ThaiNY, d/b/a M-Thai, and d/b/a Thai Rice; NINETY-NINE PLUS CORP d/b/a ThaiNY, d/b/a M-Thai, and d/b/a Thai Rice; 9999

MIDTOWN CORP d/b/a ThaiNY, d/b/a M-Thai, and d/b/a Thai Rice.

175. At all relevant times, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone was not paid spread-of-hours for all days in which she worked over ten (10) hours in a workday.

176. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone and similarly situated employees with Time of Hire Notice in English and in Thai (Plaintiff's primary language) reflecting true rates of pay and payday.

177. At all relevant times, Defendants knowingly and failed to provide Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone and similarly situated employees with paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (Plaintiff's primary language), as required by NYLL § 195(1).

178. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

179. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**2014/09/08-2014/10/19**

180. From on or about September 8, 2014 to October 19, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked for ThaiNY at 394 Third Avenue, New York, NY 10016 and M-Thai at 232 8th Avenue, New York, NY 10011.

181. From on or about September 8, 2014 to October 19, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone's regular work schedule ran from:

      a.    11:00 to 22:30, with break from 15:00 to 17:00 outside for nine and a half (9.5) hours a day on Monday, Tuesday, Wednesday, Friday, and Saturday for five (5) days and forty seven and a half (47.5) hours a week.

182. From on or about September 8, 2014 to October 19, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked on Mondays, Tuesdays and Wednesdays for three (3) days at ThaiNY at 394 Third Avenue, New York, NY 10016.

183. From on or about September 8, 2014 to October 19, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked on Fridays and Saturdays for two (2) days at M-Thai at 232 8th Avenue, New York, NY 10011.

184. From on or about September 8, 2014 to October 19, 2014, Plaintiff was paid a flat compensation of five hundred and seventy five dollars ($575) in cash every week.

**2014/10/20-2014/11/09**

185. From on or about October 20, 2014 to November 9, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked for Tom Yum at 200 8th Avenue, New York, NY 10011.

186. From on or about October 20, 2014 to November 9, 2014, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone's regular work schedule ran from:

      a.    11:00 to 22:30, with no break, for eleven and a half (11.5) hours a day for six (6) days and sixty nine (69) hours a week.

187. From on or about October 20, 2014 to November 9, 2014, Plaintiff was paid a flat

compensation of six hundred ninty dollars ($690) in cash every week.

**2014/11/10-2015/07/31**

188.    From on or about November 10, 2014 to July 31, 2015, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone worked for ThaiNY at 394 Third Avenue, New York, NY 10016 and Tom Yum at 200 8th Avenue, New York, NY 10011.

189.  From on or about November 10, 2014 to July 31, 2015, Plaintiff PHOUVIENGSONE SYSOUVONG a/k/a Tukta Phouviengsone's regular work schedule ran from:

      a.    11:00 to 22:30, with no break, for eleven and a half (11.5) hours a day for five (5) days and fifty seven and a half (57.5) hours a week, with Friday and Sundays off.

190.    From on or about November 20, 2014 to February 19, 2015 was paid a flat compensation of five hundred seventy five dollars ($575) in cash every week.

191.    From on or about February 20, 2015 to July 31, 2017 was paid a flat compensation of six hundred dollars ($600) in cash every week.

***Plaintiff SUPUNNEE SUKASAWETT***

192.    From on or about January 01, 2010 to November 24, 2016, Plaintiff SUPUNNEE SUKASAWETT worked as a chef for:

      a.    Thainy Uptown (also known as Thai's New York Uptown) at 1750 2nd Avenue, New York, NY 10128;

      b.    M-Thai 1 at 232 Eighth Avenue, New York 10011;

      c.    M-Thai 2 at 200 Eighth Avenue, New York, NY 10011; and

      d.    Thai Rice at 165 West 23rd Street, New York, NY 10011.

193.    At all relevant times, Plaintiff SUPUNNEE SUKASAWETT was never paid spread-of-hours for all days in which she worked over ten (10) hours in a work day.

194.    At all relevant times, Plaintiff SUPUNNEE SUKASAWETT never received a Time

of Hire Notice in English and Thai (her primary language) reflecting true rates of pay and payday.

195.    At all relevant times, Plaintiff SUPUNNEE SUKASAWETT never received any paystubs, not to say a comprehensive one that lists the employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (my primary language), as required by NYLL §195(1).

196.    From January 01, 2010 to July 22, 2012, PLAINTIFF SUPUNNEE SUKASAWETT worked for Thainy Uptown:

    a.    From 11:00 to 23:00 for twelve (12) hours a day, with no break, on Tuesdays, Wednesdays, Thursdays, and Sundays for four (4) days and forty eight (48) hours a week;

    b.    From 11:00 to 24:00 for thirteen (13) hours a day, with no break, on Fridays and Saturdays for two (2) days and twenty six (26) hours a week; and

    c.    With Mondays off.

197.    From January 01, 2010 to July 22, 2012, PLAINTIFF SUPUNNEE SUKASAWETT worked around seventy four (74) hours a week.

198.    From on or about January 01, 2010 to December 31, 2010, PLAINTIFF SUPUNNEE SUKASAWETT was paid at a rate of one hundred and five dollars ($105) per day for one (1) year.

199.    Thereafter, between January 01, 2011 and July 22, 2012, PLAINTIFF SUPUNNEE SUKASAWETT was raised by five dollars ($5) per day every three (3) to six (6) months, to one hundred ten dollars ($110) per day, then one hundred fifteen dollars ($115) per day, one hundred twenty dollars ($120) per day, one hundred twenty five dollars ($125) a day, one

hundred thirty dollars ($130) per day, one hundred thirty five dollars ($135) a day.

200.    Finally, PLAINTIFF SUPUNNEE SUKASAWETT was raised to one hundred fifty dollars ($150) a day.

201.    By her last day at Thainy Uptown, PLAINTIFF SUPUNNEE SUKASAWETT already had the one hundred fifty dollar ($150) per day rate for a few days.

202.    In fact, PLAINTIFF SUPUNNEE SUKASAWETT had this rate for a few months before PLAINTIFF SUPUNNEE SUKASAWETT was asked by PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan to transfer to M-Thai 1 on July 23, 2013.

203.    From on or about July 23, 2012 to October 30, 2015, PLAINTIFF SUPUNNEE SUKASAWETT worked as a chef for M-Thai 1.

204.    From on or about July 23, 2012 to October 30, 2015, PLAINTIFF SUPUNNEE SUKASAWETT worked for M-Thai 1:

a.    From 11:00 to 23:00 for twelve (12) hours a day with no break, on Tuesdays, Wednesdays, Thursdays, and Sundays for four (4) days and forty eight (48) hours a week;

b.    From 11:00 to 24:00 for thirteen (13) hours a day, with no break, on Fridays and Saturdays for two (2) days and twenty six (26) hours a week; and

c.    With Mondays off.

205.    From on or about July 23, 2012 to October 30, 2015, PLAINTIFF SUPUNNEE SUKASAWETT worked around seventy four (74) hours a week.

206.    From on or about July 23, 2012 to October 30, 2015, PLAINTIFF SUPUNNEE SUKASAWETT was paid at a rate of one hundred fifty dollars ($150) per day.

207.    Around this time, PLAINTIFF SUPUNNEE SUKASAWETT was asked by

PERAPONG CHOTIMANENOPHAN a/k/a Peter Chotimanenophan work for M-Thai 2 and Thai Rice.

208.    From on or about November 01, 2015 to November 24, 2016, PLAINTIFF SUPUNNEE SUKASAWETT worked as a chef for M-Thai 2 and Thai Rice, with one (1) day at Thai Rice and the remaining at M-Thai2.

209.    From on or about November 01, 2015 to July 14, 2016, PLAINTIFF SUPUNNEE SUKASAWETT worked for M-Thai 2 and Thai Rice:

      a.    From 11:00 to 23:00 for twelve (12) hours a day with no break, on Tuesdays, Wednesdays, Thursdays, and Sundays for four (4) days and forty eight (48) hours a week;

      b.    From 11:00 to 24:00 for thirteen (13) hours a day, with no break, on Fridays and Saturdays for two (2) days and twenty six (26) hours a week; and

      c.    With Mondays off.

210.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

211.    From on or about November 01, 2015 to July 14, 2016, PLAINTIFF SUPUNNEE SUKASAWETT worked for M-Thai 2 and Thai Rice:

      a.    From 11:00 to 23:00 for twelve (12) hours a day with no break, on Tuesdays, Wednesdays, Thursdays, and Sundays for four (4) days and forty eight (48) hours a week;

      b.    From 11:00 to 24:00 for thirteen (13) hours a day, with no break, on Fridays

and Saturdays for two (2) days and twenty six (26) hours a week; and

    c.    With Mondays off.

212.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

213.    As a result, from on or about November 01, 2015 to July 14, 2016, PLAINTIFF SUPUNNEE SUKASAWETT worked around seventy four (74) hours a week.

214.    From on or about November 01, 2015 to July 14, 2016, PLAINTIFF SUPUNNEE SUKASAWETT continued to be paid at a rate of one hundred fifty dollars ($150) per day.

215.    From on or about July 15, 2016 to August 31, 2016, PLAINTIFF SUPUNNEE SUKASAWETT worked for M-Thai 2 and Thai Rice:

    a.    From 12:00 to 22:30 for ten and a half (10.5) hours a day with no break, on Tuesdays, Wednesdays, and Thursdays for five (5) days and fifty two and a half (52.5) hours a week;

    b.    With Mondays and Sundays off.

216.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

217.    From on or about July 15, 2016 to August 31, 2016, PLAINTIFF SUPUNNEE SUKASAWETT continued to be paid at a rate of one hundred fifty dollars ($150) per day.

218.    From on or about September 01, 2016 to November 24, 2016, PLAINTIFF

SUPUNNEE SUKASAWETT worked for M-Thai 2 and Thai Rice:

      a.      From 12:00 to 22:30 for ten and a half (10.5) hours a day with no break, on Tuesdays, Wednesdays, and Thursdays between four (4) to five (5) days a week.

      b.      With Mondays and Sundays off.

219.    Though PLAINTIFF SUPUNNEE SUKASAWETT worked for between four (4) to five (5) days a week, PLAINTIFF SUPUNNEE SUKASAWETT worked more four (4) days a week than five (5) days a week.

220.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

221.    From on or about September 01, 2016 to November 24, 2016, PLAINTIFF SUPUNNEE SUKASAWETT continued to be paid at a rate of one hundred fifty dollars ($150) per day.

222.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

223.    While there is a two and a half hour "break" at Thai Rice, PLAINTIFF SUPUNNEE SUKASAWETT have had to do side work doing her break, including spring rolls, dumpling sauce, peanut sauce, appetizer, and the cooking sauce, and the cucumber sauce, and the plum sauce, making a different sauce each day.

224.    From on or about September 01, 2016 to November 24, 2016, PLAINTIFF

SUPUNNEE SUKASAWETT continued to be paid at a rate of one hundred fifty dollars ($150) per day.

225.    During the entirety of this time, PLAINTIFF SUPUNNEE SUKASAWETT was never informed of her hourly rate or what her hourly rate would be if PLAINTIFF SUPUNNEE SUKASAWETT worked more than forty (40) hours each week, whether verbally or in writing, whether in English or in Thai.

226.    During the entirety of this time, PLAINTIFF SUPUNNEE SUKASAWETT also never received any paystub, whether at the time when PLAINTIFF SUPUNNEE SUKASAWETT received pay nor any time afterwards.

227.    During the entirety of this time, whenever there was a day in which her start time and her end time spanned over ten (10) hours, PLAINTIFF SUPUNNEE SUKASAWETT was never paid an extra hour of pay.

228.    From on or about January 01, 2010 to July 22, 2012 at Thainy Uptown, and from July 23, 2012 to October 2012 at M-Thai 1, PLAINTIFF SUPUNNEE SUKASAWETT was paid every week by the Manager, on a Friday in cash.

229.    Thereafter, from October 2012 till the end of her employment on November 24, 2016, PLAINTIFF SUPUNNEE SUKASAWETT was paid in check.

***Plaintiff WIPAPORN SITTIDEJ***

230.    From on or about the end of June or beginning of July 2013 to on or about February 01, 2014, PLAINTIFF WIPAPORN SITTIDEJ worked as an appetizer and food prep for ThaiNY Uptown (also known as Thai's New York Uptown) at 1750 2nd Avenue, New York, NY 10128, and M-Thai 1 at 232 Eighth Avenue, New York, NY 10011.

231.    From on or about the summer of 2014 for six (6) months, PLAINTIFF WIPAPORN SITTIDEJ worked as an appetizer and food prep for ThaiNY Uptown.

232.    During the entirety of her work with these restaurants, PLAINTIFF WIPAPORN SITTIDEJ was never paid spread-of-hours for all days in which PLAINTIFF WIPAPORN SITTIDEJ worked over ten (10) hours in a workday.

233.    During the entirety of her work with these restaurants, PLAINTIFF WIPAPORN SITTIDEJ never received a Time of Hire Notice in English and in Thai (her primary language) reflecting true rates of pay and payday.

234.    PLAINTIFF WIPAPORN SITTIDEJ also never received any paystubs, not to say a comprehensive one that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (her primary language), as required by NYLL §195(1).

235.    PLAINTIFF WIPAPORN SITTIDEJ never saw the required minimum wage poster.

236.    From the end of June or beginning of July 2013 to on or about February 01, 2014, PLAINTIFF WIPAPORN SITTIDEJ worked for ThaiNY Uptown from 10:30 to 24:00 for thirteen and a half (13.5) hours a day, for (2) days or twenty-seven (27) hours a week and for M-Thai 1 from 10:30 to 23:00 for twelve and a half (12.5) hours a day, for between two (2) to three (3) days a week.

237.    PLAINTIFF WIPAPORN SITTIDEJ would work for ThaiNY Uptown on Thursdays and Fridays.

238.    PLAINTIFF WIPAPORN SITTIDEJ would work for M-Thai 1 for two or three days on Mondays, Tuesdays and Wednesdays.

239.    From the end of June or beginning of July 2013 to on or about February 01, 2014,

PLAINTIFF WIPAPORN SITTIDEJ would work a total of four (4) days a week sixty percent (60%) of the time and a total of five (5) days the other forty percent (40%) of the time.

240.    From the end of June or beginning of July 2013 to on or about February 01, 2014, PLAINTIFF WIPAPORN SITTIDEJ would receive one hundred twenty dollars ($120) for each day worked.

241.    From the summer of 2014 for six (6) months, PLAINTIFF WIPAPORN SITTIDEJ worked for ThaiNY Uptown for five (5) days around half of the time and six (6) days around half of the time, from 10:30 to 24:00.

242.    From the summer of 2014 for six (6) months, PLAINTIFF WIPAPORN SITTIDEJ also received one hundred twenty dollars ($120) for each day worked.

243.    PLAINTIFF WIPAPORN SITTIDEJ would work for ThaiNY Uptown on Thursdays and Fridays.

244.    PLAINTIFF WIPAPORN SITTIDEJ would work for M-Thai 1 for two or three days on Mondays, Tuesdays and Wednesdays.

245.    From the end of June or beginning of July 2013 to on or about February 01, 2014, PLAINTIFF WIPAPORN SITTIDEJ would work a total of four (4) days a week sixty percent (60%) of the time and a total of five (5) days the other forty percent (40%) of the time.

246.    From the end of June or beginning of July 2013 to on or about February 01, 2014, PLAINTIFF WIPAPORN SITTIDEJ would receive one hundred twenty dollars ($120) for each day worked.

### Plaintiff VINAI PATAN

247.    From on or about February 14, 2012 (Valentine's Day) till December 21, 2013, PLAINTIFF VINAI PATAN worked for ThaiNY Downtown and ThaiNY Uptown.

248.    From on or about February 14, 2012 (Valentine's Day) till December 21, 2013,

PLAINTIFF VINAI PATAN worked seven (7) days a week.

249.    PLAINTIFF VINAI PATAN would work from:

a.    10:30 to 23:00 with one hour break, for eleven and a half (11.5) hours, for three (3) days and thirty four and a half (34.5) hours a week;

b.    From 10:30 to 24:00, with one hour break, for twelve and a half (12.5) hours, for two (2) days or twenty five (25) hours a week; and

c.    From 11:00 to 22:00, with one hour break, for eleven (11) hours , with one hour break, on Sundays.

250.    In total, from on or about February 14, 2012 (Valentine's Day) till December 21, 2013, PLAINTIFF VINAI PATAN would work for around sixty nine and a half (69.5) hours a week.

251.    From February 2012 to March 2012, PLAINTIFF VINAI PATAN was paid one hundred ten dollars ($110) a day.

252.    From April 2012 till the end of his employment, PLAINTIFF VINAI PATAN was paid one hundred fifteen dollars ($115) a day.

253.    From August or September of 2012, PLAINTIFF VINAI PATAN was transferred to ThaiNY downtown, where PLAINTIFF VINAI PATAN worked till the end of his employment in the end of December.

254.    There, PLAINTIFF VINAI PATAN would also work from:

a.    10:30 to 23:00 with one hour break, for eleven and a half (11.5) hours, for three (3) days and thirty four and a half (34.5) hours a week;

b.    From 10:30 to 24:00, with one hour break, for twelve and a half (12.5) hours, for two (2) days or twenty five (25) hours a week; and

c.      From 11:00 to 22:00, with one hour break, for eleven (11) hours , with one hour break, on Sundays.

255.    During the entirety of his work with these restaurants, PLAINTIFF VINAI PATAN was never paid spread-of- hours for all days in which PLAINTIFF VINAI PATAN worked over ten (10) hours in a workday.

256.    During the entirety of his work with these restaurants, PLAINTIFF VINAI PATAN never received a Time of Hire Notice in English and in Thai (his primary language) reflecting true rates of pay and payday.

257.    PLAINTIFF VINAI PATAN also never received any paystubs, not to say a comprehensive one that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in English and in Thai (his primary language), as required by NYLL §195(1).

258.    PLAINTIFF VINAI PATAN never saw the required minimum wage poster.

*Plaintiff PHAISIT SIRIMATRASIT*

259.    From beginning of 2015 to end of 2015, Plaintiff PHAISIT SIRIMATRASIT was employed by Defendants to work as a kitchen worker at Thainy Downtown at 394 Third Avenue, New York, NY 10016; ThaiNY Uptown (also known as Thai's New York Uptown) at 1750 2nd Avenue, New York, NY 10128; and M-Thai.

260.    As a kitchen worker, I had to wash vegetables, slice meet and help others with food prep.

261.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT's regular work schedule ran from 10:30 to 23:30 with no break at all during work days for five (5) days per week, days off not fixed for a total of sixty-five (65) hours each week.

262.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT did not have a fixed time for lunch or for dinner.

263.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT was paid a flat compensation at a rate of five hundred fifty dollars ($550.00) per week but sometimes Plaintiff PHAISIT SIRIMATRASIT would instead be paid a lesser amount like Five Hundred Dollars ($500).

264.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT was not paid overtime pay for overtime work.

265.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

266.    At all relevant times, Plaintiff PHAISIT SIRIMATRASIT's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

267.    Throughout his employment, Plaintiff PHAISIT SIRIMATRASIT was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Thai, Plaintiff's native language.

268.    Throughout his employment, Plaintiff PHAISIT SIRIMATRASIT was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

269.    Throughout his employment, Plaintiff PHAISIT SIRIMATRASIT was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

*Plaintiff PEDRO COJ CUMES*

270.    From April 2015 to October 2017, Plaintiff PEDRO COJ CUMES was employed by Defendants to work as a deliveryman.

271.    Initially, from April 2015 to December 2015, Plaintiff PEDRO COJ CUMES worked mostly at M-Thai 2 at 200 8th Avenue, New York, NY 10011.

272.    Later from January 2016 to October 2017, Plaintiff PEDRO COJ CUMES worked mostly at M-Thai 1 at 232 8th Avenue, New York, NY 10011 from January 2016 to October 2017.

273.    At all relevant times, Plaintiff PEDRO COJ CUMES's regular work schedule ran from 11:00 to 23:00 for twelve (12) hours for six (6) days with Thursday off for a total of seventy-two (72) hours each week.

274.    From on or about April 15, 2015 to October 15, 2017, Plaintiff PEDRO COJ CUMES was paid a flat compensation at a rate of two hundred twenty dollars ($220.00) per to Two Hundred Seventy Dollars ($270) in cash every week.

275.    However, the check given to Plaintiff PEDRO COJ CUMES would almost always bounce.

276.    As a result, Plaintiff PEDRO COJ CUMES would need to bring the check back for exchange into cash.

277.    At all relevant times, Plaintiff PEDRO COJ CUMES was not paid overtime pay for overtime work.

278.    At all relevant times, Plaintiff PEDRO COJ CUMES was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

279.    Throughout his employment, Plaintiff PEDRO COJ CUMES was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from

employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

280.    Throughout his employment, Plaintiff PEDRO COJ CUMES was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

281.    Throughout his employment, Plaintiff PEDRO COJ CUMES was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

282.    As part of Plaintiff's employment with Defendants, Plaintiff PEDRO COJ CUMES was required to bear the cost of the purchase of a bicycle at a cost of fie hundred dollars ($500) plus maintenance costs of One Thousand Eight Hundred Dollars ($1,800) per year.

283.    Plaintiff PEDRO COJ CUMES was not reimbursed by Defendants for the cost of maintaining the delivery vehicle for Defendants' benefit.

***Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul***

284.    In or about September 2014, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul was employed by Defendants to work as a runner and waiter at "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016.

285.    Initially, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul worked all five (5) work days of five (5) workdays at "ThaiNY Restaurant" located at 394 Third Avenue, New York, NY 10016.

286.    From September 2014 to September 2015, Plaintiff began to work more and more days at both "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by THAINY RESTAURANT LLC d/b/a M Thai) and "Tom Yum," later called "M-Thai," located

at 200 Eighth Avenue, New York, NY 10011 (operated by J AKIRA LLC d/b/a Tom Yum d/b/a M-Thai).

287.    From in or around September 2015 to March 21, 2017, Plaintiff worked all five (5) workdays of five (5) workdays at M-Thai.

288.    From on or about May 2017 to the present day, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas worked for "Thais New York" located at 1718 Second Avenue, New York, NY 10128.

289.    From September 2014 to September 2015, at ThaiNY Downtown, Plaintiff CHAICHANA KITTIRONNAKORNKUL A/K/A KAY KITTIRONNAKORNKUL's regular work schedule ran from:

      a.    ***Early Shift*** 11:00 to 22:00, with one (1) hour break for ten (10) hours a day for five (5) days;

      b.    ***Late Shift*** 12:00 to 23:00 with no break for eleven (11) hours a day.

290.    At M-Thai, Plaintiff CHAICHANA KITTIRONNAKORNKUL A/K/A KAY KITTIRONNAKORNKUL's regular work schedule ran from 11:00 to 23:0, with two (2) hour break for ten (10) hours a day.

291.    From September 2014 March 21, 2017, Plaintiff worked five (5) workdays.

      a.    ***Early Shift*** 11:00 to 22:00, with one (1) hour break for ten (10) hours a day for five (5) days;

      b.    ***Late Shift*** 12:00 to 23:00 with no break for eleven (11) hours a day.

292.    From September 2014 to    March 21, 2017, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul did not have a fixed time for lunch or for dinner.

293.    From May 2017 to the present day, Plaintiff worked four (4) "full" days and one (1) half day.

    a.    12:00 to 23:00 with two (2) hour break and one (1) hour lunch break for eight (8) hours a day for four (4) days and thirty two (32) hours a week; and

    b.    17:00-23:00 with thirty (30) minutes break for five and a half (5.5) hours a week for a total thirty seven and a half (37.5) hours a week.

294.    From September 2014 March 21, 2017, Plaintiff CHAICHANA

295.    From on or about September 01, 2014 to March 21, 2017, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas paid a flat compensation at a rate of forty dollars ($40.00) per day.

296.    From on or about May 2017 to the present day, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas paid a flat compensation at a rate of thirteen dollars ($12.50) per hourfor each hour worked.

297.    At all relevant times, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas not paid overtime pay for overtime work.

298.    At all relevant times, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas never informed of his hourly pay rate or any tip deductions toward the minimum wage.

299.    At all relevant times, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkul's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

300.    Throughout    his    employment,    Plaintiff    CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas not given a statement with his

weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Thai, Plaintiff's native language.

301. Throughout his employment, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

302. Throughout his employment, Plaintiff CHAICHANA KITTIRONNAKORNKUL a/k/a Kay Kittironnakornkulwas not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

**Plaintiff SUPATRA WUNGMARN**

303. From on or about November 29, 2013 to December 24, 2014, Plaintiff SUPATRA WUNGMARN was employed by Defendants to work as a waitress and kitchen worker at "M Thai" located at 232 Eighth Avenue, New York, NY 10011 (operated by THAINY RESTAURANT LLC d/b/a M Thai); and "Tom Yum," later called "M-Thai," located at 200 Eighth Avenue, New York, NY 10011.

304. Specifically, Plaintiff would work at Tom Yum for six (6) days and M-Thai for one (1) day or two (2) days.

305. From on or about November 29, 2013 to December 24, 2014, Plaintiff SUPATRA WUNGMARN's regular work schedule ran from 10:30 to between 23:00 and 23:30 for thirteen (13) hours for six (6) days for sixty percent (60%) of the time and seven (7) days for the remaining forty percent (40%) of the time for a total of eighty-three (83) hours each week.

306. At all relevant times, Plaintiff SUPATRA WUNGMARN did not have a fixed

time for lunch or for dinner.

307.    From on or about November 29, 2013 to December 24, 2014, Plaintiff SUPATRA WUNGMARN was paid a flat compensation at a rate of one hundred twenty dollars ($120.00) per day.

308.    At all relevant times, Plaintiff SUPATRA WUNGMARN was not paid overtime pay for overtime work.

309.    At all relevant times, Plaintiff SUPATRA WUNGMARN was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

310.    At all relevant times, Plaintiff SUPATRA WUNGMARN's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

311.    Throughout her employment, Plaintiff SUPATRA WUNGMARN was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

312.    Throughout her employment, Plaintiff SUPATRA WUNGMARN was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

313.    Throughout her employment, Plaintiff SUPATRA WUNGMARN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

## COLLECTIVE ACTION ALLEGATIONS

314.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the

Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

315.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

316.    All said persons, including Plaintiffs, are referred to herein as the "Class."

317.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

### Numerosity

318.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are over forty (40) members in the class.

### Commonality

319.    There are questions of law and fact common to the Class which predominate over

any questions affecting only individual class members, including:

    a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b.    Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

    c.    Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

    d.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

    e.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

    f.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

    g.    Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

    h.    At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

320.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime compensation.

They were, furthermore, subject to illegal deductions. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

321.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

322.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by

individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

323.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of the FLSA & NYLL Plaintiffs and the FLSA Collective]**

324.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

325.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory overtime wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

326.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

327.    Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23 Class]

328.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

329.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

330.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

331.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

332.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the FLSA & NYLL Plaintiffs and the FLSA Collective]

333.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

334.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

335.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

336.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

337.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

338.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

339.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

340.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
**[Violation of New York Labor Law—Overtime Pay
Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23
Class]**

341.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

342.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

343.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

344.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

345.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.
**[Violation of New York Labor Law—Spread of Time Pay
Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23
Class]**

346.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

347.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

348.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Record-Keeping Requirements
Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23
Class]

349.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

350.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

351.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

352.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiff's labor.

353.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23
Class]

354.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

355.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

356.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their first day of employment.

357.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

358.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-b).

**COUNT VIII.**
**[Violation of New York Labor Law—New York Pay Stub Requirement**
**Brought on behalf of the FLSA & NYLL Plaintiffs, the NYLL Plaintiffs, and the Rule 23**
**Class]**

359.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

360.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

361.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

362.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to

$5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law § 198(1-d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the

amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    Rehiring or reinstatement of the employee to his or her position with restoration of seniority or an award of front pay in lieu of reinstatement under 29 U.S.C. § 216 and NYLL § 215;

h)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. § 216;

i)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)    An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

m)    The cost and disbursements of this action;

n)    An award of prejudgment and post-judgment fees;

o)    Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

p)        Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
         December 5, 2019

TROY LAW, PLLC
*Attorney for the Plaintiffs, proposed FLSA*
*Collective and Proposed Class Plaintiffs*


 /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com